That leads us to the third SITO case, No. 22-2120, SITO Mobile v. Hulu, LLC. Mr. Yang, it's time. Good morning, Your Honor. May it please the Court, my name is Mitch Yang, and I represent the appellants at SITO Mobile. As we all know, the first step of the Alice Mayo test is to determine whether the claims are directed to a patent-eligible concept. And I want to emphasize that what this requires is us to first identify what concept the claims are directed to, and then ask, is that concept eligible or ineligible? That means we look at the claim language in light of the specification, find the concept of that claim, and then test it for abstractness by asking, is the concept abstract or concrete? Step one does not say that we should conceive of an abstract idea and then ask whether the claims could arguably fall within the limits of that abstract idea. And the reason for this is because the Supreme Court cautioned in Mayo, all inventions at some level embody abstract ideas. Under the Alice Mayo inquiry, you have to start by identifying the concept of the claim. Are you suggesting that the PTAB actually did that, that they said, this is an abstract idea, so therefore let me look at the claims and see how I can pigeonhole them into an abstract idea? That is the exact reason that I am here today, Your Honor, because if you look at the final written decision, the board said, here is appellant's abstract idea. And for this reason, we believe that the claim does not meet step one. But the error of this is that the final written decision has to look at the claim language in view of the specification and first determine what the claim is directed to. The board never did that because... But the board did state what it thought the claim was directed to. The board stated an abstract idea and thought that this abstract idea... Can you tell me what page of the board's decision you're relying on? Certainly, Your Honor. I'm relying on... Starting with Appendix 29, where it discusses the first step of the Alistair Judicial Test, the board states that here Petitioner asserts that the challenge claims are directed to an abstract idea of managing distribution of audio and video content based on characteristics of the consumer. So the board has already had that abstract idea in mind. And then further on in the discussion... But this is just saying what the parties' arguments are. That's true, but that's the abstract idea that it came up with, and then it found a... But it agreed with the Petitioner. That's true, but the board has to analyze the claim language first in order to come up with the concept behind the claim language and then ask whether that concept is abstract or concrete. Standard of review to reply here. The standard of review is de novo review because this is an issue, this is a legal issue. The legal issue here is that the board has to look at the claim language and come up with the concept, then ask whether the concept is abstract or concrete. But the standard of review, what difference does it make exactly how the board approached it? So why don't you tell us why the board's characterization of the abstract idea is wrong. Certainly, that was going to be my next point. I think the board's characterization of this abstract idea is wrong because it omits several inventive claim elements that are in the claim language. And objectively, this abstract idea is too broad to be the claim concept. So if you look at Claim 98, the claim specifies several elements over the base abstract idea of merely distributing audio and video content based on consumer characteristics, which is what the board said. These are, one, identifying and streaming portions of the requested media, and two, based on one or more technical capabilities of the communication device. Neither of these ideas, which is the inventive precedent we mentioned, are found in the board's abstract idea. So the abstract idea is missing these two elements. We contend that the inventive... What makes those elements a technological advantage that overcomes a technological problem? How is it technological that you're going to distribute portions? Bear in mind that we might say that portions could include an entire video, an entire movie, for example. Well, respectfully, Your Honor, we don't... The construction of portions that we're using is that the portion does not constitute an entire video. Under the plain and ordinary meaning of the word portion, it has to be a subset of the whole. And the whole is the movie, according to the patent specification. Suppose we reject that. Suppose you... Even if you rejected it, the technological improvement here is that you're distributing portions of the whole to different resource servers. So each resource contains different portions thereof. You're not... It's not all contained in one resource. You have multiple... That seems to assume that you're right on the claim construction issue. If you're wrong on the claim construction issue about what portions means, that argument goes away. Respectfully, Your Honor, I don't believe that's true because the claim itself says that the resource stores portions. So even if the portion... You're re-arguing something which I've just asked you to assume you lose on. No, Your Honor. Respectfully, I am not. What I'm saying is that the resource... Each resource stores a portion. So even if the portion is a whole, each of those wholes has to be stored in a different resource. That's different than what you're saying. What I'm saying is that you have to have multiple resources. And these resources are distributing the portions themselves. Even if the portions are a whole, that would... How does the idea of having different repositories, if you will, of different video storage and distributing that, as you say... Well, how is distributing the movies or the video content... What makes that more than an abstract idea? Well, Your Honor, it's not just about distributing video content. That was the point I was making about the board coming up with the wrong concept and then applying that. This is about distributing the media, and the media is divided into portions. The portions are stored on various resources. And then we're selecting those resources based on the capabilities of the communication device. So in the specific claim... So the technological advance here, to go back to Judge Stoll's question, is the idea of storing portions of a resource on different servers. Is that the crux of your argument? That's partially, but it's not the complete answer. The complete answer is that in addition to storing these portions on different resources, you're then selecting the appropriate resource to distribute the portion, each individual portion, to the communication device based on the capabilities of the communication device. That's the second half of it. So together, what you're doing is you're distributing the whole into portions, putting them on all these various resources, and you're selecting the appropriate resource based on the capabilities of the communication device. That is all within the language of the claims. It's all over the claims. And that is what we contend to be the concept here that should have been applied for Step 1. Not merely distributing media as a whole, but dividing the media into specific portions, putting them on different resources, and then selecting the resources to distribute based on the capabilities of the communication device. One of the problems I'm having with your recitation of what the inventive concept is, is that the claim seems broader, setting aside portions for a minute. It talks about using at least one resource other than the at least one computing resource. And so the claim is that it doesn't seem to be talking about multiple resources. Am I missing something? Yes, Your Honor. I believe that the independent claim itself is broad, but there are certain dependent claims that talk about additional portions and additional resources. Did you argue the dependent claim separately with respect to 101? We did argue that Claim 98 is not representative. And the dependent claims are a reason for why those claims are not representative. Do you argue the dependent claims separately? We did argue that the dependent claims require additional, more than one segment or portion. But you agree that Claim 98 doesn't? I agree that Claim 98 recites one portion. And then, for example, Claim 90 recites an additional portion. So Claim 90, similar to the arguments of the previous— But I don't have that portion, but I was talking about resource. Well, each resource is assigned—each portion is assigned to a resource. So if you have an additional portion, you would have an additional resource. Where is that in the claim, or any claim, that each portion is assigned a resource? If you look at Claim 98, what it says is that, to obtain at least one portion of the requested media using at least one resource. So the resource is providing the at least one portion. Okay. So to illustrate the technological nature of the claims, I want to consider a police-real world analogy on page 9 of their brief, which is a movie theater for customers to watch movies, where you buy a movie ticket, get the movie ticket, and watch the movie. But as I just explained, the claim concept is more than that. You have to divide the movie up into portions. Then you have to have different resources serving each of those portions, based on the capabilities of the communication device. What that entails is that you can't just buy a movie for the entire— you can't buy a ticket for the entire movie. You have to buy a ticket for each individual part of the movie. Then you go into different movie theaters based on the capabilities of those theaters. So essentially, you have multiple tickets. You would jump in and out of movie theaters based on which movie theater had the best, for example, sound or the best lighting for that specific segment or portion you're interested in. And then you would go back and forth between all these theaters. That is just not a practical real-world analogy to what the technology is here. That's not within the technical capabilities of a movie watcher either. I personally have never jumped out of a movie theater multiple times because I wasn't happy with the capabilities of that particular theater. That is why, once you have the right inventive concept in mind, this isn't an abstract idea with a real-world analog. Nobody in a brick-and-mortar environment is going to do what the claims of the 887 patent are directed towards. There's no reason to do this outside of an Internet environment. And I see that I'm in my rebuttal time, so unless Your Honor has any further questions, I'd like to reserve the rest of my time for rebuttal. Okay. Mr. Williamson. Thank you, Your Honor. Good morning, and may it please the Court. Brett Williamson for the Appley Hulu. I will be very brief. The Court, and Judge Stolt in particular, has identified the problem. This claim, which was agreed through the briefing at least, there's no argument about Claim 90 or any other claim. But Claim 98, there's been no objection in the briefs before this Court. It is not exemplary. I don't recall seeing it, but there was no place in the briefs that disclaimed the notion that Claim 98 is representative. That is correct. There is nothing in Claim 98 that talks about multiple different portions being stored in different resources and then streamed in different ways based on different capabilities. That just doesn't exist. Even if you could read that purported technological innovation into this claim, and in fact our brief is clear that the expert in this case, when deposed about the patentability issue, acknowledged that this patent does not claim to, nor could it claim to have invented the notion of breaking the streaming media down for purposes of streaming content into small pieces. That's not a one-on-one argument. I think that's true, but what the argument that appears to be being made here is that the gravamen of this invention, which is of course what Alice asked us to do, was somehow this idea of a technological innovation to divide pieces of media. There's nothing here. Not in the specification and certainly not in the claims. But I just wanted to note as a final point that to the extent that the claim here, that this patent and Claim 98 are not abstract, is to direct this court back to the Affinity Labs case that we cited in our briefing at 838 F3rd at 1267, the Affinity Labs case is directly on point here. In fact, the patent there that was found to be unpatentably abstract under Section 101 disclosed a network-based delivery resource maintaining a list of network locations for at least a portion of the content. The network-based delivery resource configured to respond to the request by retrieving the portion from an appropriate network location and streaming a representation of the portion to the handheld wireless device. That's much more detailed than the claim here, and that claim was found by this court to be unpatentable. Unless there are other questions, that's all I have. Okay. Thank you, Mr. Horowitz. Mr. Yang? Thank you. Opposing counsel just said that Alice asked us to find the gravamen of the invention. I agree, and that is exactly what the Board did not do. The issue is that the Board found an abstract idea that was significantly too broad for what the claim actually specifies. The concept of the invention isn't simply distributing media. There's far more than that, as I explained. Additionally, I heard counsel say that we didn't discuss portions in the brief, and that's certainly not true. On page 2 of our opening brief, we have a discussion of portions. Then on page 22 of the brief, we discuss how reservation of portions is a technological improvement to streaming, which is the crux of my argument here. Reservation of portions is a technological improvement to streaming. Reservation? But I thought those claims didn't talk about reservation. I apologize, Your Honor. That was the next point I was going to have, is that even if there's an issue under Step 1, we point to the communication having three pieces of information, those being the identification of the portion, the identification of the resource, and the one-on-one instructions. That tells you how to actually perform streaming of the portions. It's not simply the idea of giving people portions. The claim itself, through the communication, including those three aspects, tells you how to do it. And I'd also like to point out that opposing counsel didn't discuss the other aspect that I was presenting, is that the claim itself specifies, based on the capabilities of the communication device, which is different than what we have in Affinity Labs, the claim here doesn't just specify you have a portion, then you go out and get it. The claim here says you have multiple portions. You put these portions on multiple resources. Then you select the best resource for each used communication device based on the capabilities of that device. And you're doing it for the portions stored on the resource. You're selecting the resources for each portion based on the capabilities of the device for that portion. So in this way, it's much more detailed than any of the other cases that opposing counsel suggested were analogous. In this particular 887 patent, what we're looking at is the specific resources for each portion, and we're selecting those specific resources based on the capabilities of the device. Do you have a response to opposing counsel's suggestion that claim 98 was not contested as being representable?  Did you have anything in the brief that contested their assertion that 98 was representative? Well, in the brief, what we said was that claim 98 was representative of the independent claim. We did not say that claim 98 was representative. But you didn't say that you made no argument with respect to the appended claims. I take it as being separate from claim 98 in terms of the arguments you're making today. I didn't see anything to that effect. I don't believe you listed out the claim numbers, but the argument is that the individual portions are being served by the different resources. That's on page 22 of our opening brief. And the distinction there is that the dependent claims make clear that there are multiple portions involved here. Is there some place in your blue brief where you say that, that the dependent claims make clear that there's multiple portions? What we're saying in our blue brief is that portions as construed — Could you just answer no? I'm trying to explain it. I understand. I apologize. What we said in our blue brief is that the independent claims alone, because of the word portions, make clear that there are multiple portions involved here and that they're being serviced from multiple resources. But to the extent that approving counsel was suggesting that the independent claim does not require multiple portions, then the dependent claim makes clear that there are actually multiple portions. Is that in the blue brief? I don't believe opposing counsel indicated that there weren't multiple portions in their brief, Your Honor. Isn't it in the blue brief? Blue brief. I don't believe we have to address an argument that opposing counsel didn't make in their brief. Okay. Thank you. We're out of time. Thank you. Thank both counsel. The case is submitted.